IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ANDRE McCANTS,

               Petitioner,

     v.                                      Civil Action No. 03-CV-816
                                                (TJM/DEP)

ROY A. GIRDICH, Upstate Correctional Facility
Superintendent, & ROBERT J. MURPHY, Acting
Director of Special Housing/Disciplinary Programs,

               Respondents.

_____

APPEARANCES:                   OF COUNSEL:

FOR PETITIONER:

ANDRE McCANTS, *Pro Se*

FOR RESPONDENT:

HON. ELIOT SPITZER              NELSON R. SHEINGOLD
Attorney General of the State     Assistant Attorney General
of New York
Department of Law
The Capitol
Albany, New York   12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

1

<u>REPORT AND RECOMMENDATION</u>

Petitioner Andre McCants, a former New York State prison inmate who has been released on parole, and whose whereabouts are currently unknown to the court, has commenced this proceeding seeking federal habeas review of a disciplinary hearing and resulting determination which included, as one of the sanctions, a loss of good time credits.  The petitioner, who is proceeding *pro se* and *in forma pauperis*, maintains that his procedural due process rights were violated during the course of the disciplinary proceedings.

In light of petitioner's failure to notify the court and respondent's counsel of his new address in order to facilitate communications with him, I recommend the dismissal of his petition on this procedural basis. Alternatively, applying the required deferential standard in light of the state courts' rejection of the arguments now being raised, I recommend dismissal of McCants' petition on the merits.

I.      <u>BACKGROUND</u>

On October 25, 2001, at a time when he was a prisoner within the custody of the New York State Department of Correctional Services ("DOCS") and incarcerated within the Livingston Correctional Facility,

petitioner became involved in an altercation with prison guards.  State Court Records at 22.[1]  The precipitant of that incident was an order given by Corrections Officer Caskey to the plaintiff, requiring him to participate in a work crew assignment.  R. 22.  When McCants failed to appear as directed, he was sought out and later discovered in the prison yard, and was directed to return to one of the prison dormitories and begin his assignment.  *Id.*  While petitioner initially complied and commenced working, he abruptly stopped working and began shouting expletives to prison guards.  *Id.*  After additional prison guards were summoned and petitioner was ordered to face and place his hands on a wall, the incident escalated and petitioner became violent, ultimately inflicting injury upon corrections officers and requiring the efforts of several corrections officers to subdue him.  R. 24-26.

As a result of the incident petitioner was issued two misbehavior reports, both dated October 25, 2001, one by Officer Caskey accusing petitioner of violating a direct order (Rule 106.10), failure to maintain the

---

[1]     With the answer to McCants' petition respondent's counsel has submitted a compilation of the relevant records associated with the disciplinary proceeding and resulting state administrative and court proceedings.  *See* Dkt. Entry Dated 11/3/03.  Those records are paginated and comprehensively indexed, obviously as a result of efforts which are greatly appreciated by the court.  Portions of those state court records will be cited herein as "R. ___".

cleanliness and orderliness of living quarters (Rule 118.30), being out of place (Rule 109.10) and verbal harassment (Rule 107.11), and the second issued by Corrections Sergeant M. Hubbart alleging assault on a staff member (Rule 100.11), violent conduct (Rule 104.11), creating a disturbance (Rule 104.13), failure to comply with a frisk procedure (Rule 115.10) and failure to obey a direct order (Rule 106.10).  R. 22, 24-26.  A Tier III disciplinary hearing was conducted to address the two misbehavior reports issued to the petitioner arising out of the incident, beginning on October 31, 2001, with Rick Bartlett, a deputy superintendent at the Livingston Correctional Facility, assigned to preside over the hearing.[2]  R. 36-100.  During the course of the hearing five corrections workers, including Corrections Officer Caskey and Sergeant Hubbart, were called to testify.  R. 56-94.  Petitioner also testified at the hearing, and additionally called a co-inmate as a witness.  R. 44-51, 94-97.

At the close of that hearing, which was adjourned on October 31, 2001

---

[2]     The DOCS conducts three types of inmate disciplinary hearings.  Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the special housing unit ("SHU").  Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits.  *See Hynes v. Squillace*, 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

and continued to completion on November 6, 2001, petitioner was found guilty on all changes with the exception of maintaining an untidy cell (Rule 118.30), and as punishment was required to serve eighteen months of disciplinary confinement in the facility's special housing unit ("SHU") with a corresponding loss of various privileges, and additionally was stripped of eighteen months of good time credits.  R. 104-05.

Petitioner appealed the results of the disciplinary hearing internally within the DOCS, resulting in the issuance of a decision on December 28, 2001 by Robert J. Murphy, Acting Director of Special Housing/Inmate Disciplinary Program for the DOCS, affirming the determination.  R. 118. Reconsideration of that determination was later denied on April 8, 2002 by DOCS Director of Special Housing/Inmate Disciplinary Program Donald Selsky.  R. 122.

On or about February 4, 2002, petitioner commenced a proceeding in New York State Supreme Court pursuant to Article 78 of New York's Civil Practice Law and Rules ("CPLR") seeking review of the disciplinary hearing and determination.  R. 1-13.  In his Article 78 petition, McCants asserted deprivation of his right to procedural due process, citing the alleged ineffectiveness of the assistance afforded him, the denial of his

request to call witnesses and obtain documents in his defense, the insufficiency of the evidence against him, and hearing officer bias as grounds for annulment of the hearing officer's determination.[3]  R. 1-13. That Article 78 petition was subsequently transferred to the New York State Supreme Court, Appellate Division, Third Judicial Department, which issued a decision on December 2, 2002, upholding the disciplinary determination.  R. 174-75.  In its decision, *inter alia*, the Third Department found substantial evidence to support the hearing officer's finding of guilt, and rejected the various other arguments raised as lacking in merit.[4]  R. 174-75.  Leave to appeal from that determination to the New York State Court of Appeals was denied on June 17, 2003.  R. 237.

II.    PROCEDURAL HISTORY

Petitioner commenced this proceeding on July 2, 2003.  Dkt. No. 1. A response to the petition submitted by the New York State Attorney General, acting on behalf of the named respondents, together with a legal memorandum and a compilation of the relevant state court records, were

---

[3]    In his Article 78 petition McCants also raised various non-constitutional claims, including the excessiveness of the punishment imposed and alleged errors in the texts of the disputed misbehavior reports.

[4]    The Article 78 determination is reported at 301 A.D.2d 713, 753 N.Y.S.2d 559 (3d Dept. 2003).

received by the court on November 3, 2003.  Dkt. Nos. 8, 9.  Petitioner

thereafter filed a reply affidavit and reply memorandum on December 2,

2003, in further support of his petition.[5]  Dkt. No. 11.

This matter, which is now ripe for determination, has been referred

to me for the issuance of a report and recommendation, pursuant to 28

U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

A.   Failure of Petitioner to Notify the Court of his Change of
Address

In preparing to issue this report and recommendation I directed a

member of my chambers staff to search the New York DOCS Inmate

Locator System to determine petitioner's current status.  That search

revealed that on or about May 13, 2004, McCants was paroled and is

therefore no longer in DOCS custody.  As an initial matter, I must address

petitioner's apparent failure to apprise the court of his change in

circumstances, an omission which obviously deprives the court and

respondent's counsel of the ability to communicate with him.

---

[5]   A motion filed by McCants on February 27, 2004, seeking an evidentiary
hearing, Dkt. No. 14, and opposed by the respondent, Dkt. No. 16, was denied by
order issued by me on April 26, 2004.  Dkt. No. 19.

7

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss an action based on a plaintiff's failure to prosecute an action.   Fed. R. Civ. P. 41(b); *Link v. Wabash RR Co.*, 370 U.S. 626, 629-33, 82 S. Ct. 1386, 1388-90 (1962); *Williams v. Faulkner*, No. 95-CV-741, 1998 WL 278288, at *2 (N.D.N.Y. May 20, 1998) (Pooler, J. & Scanlon, M.J.); *Minix v. DeAngelo*, No. 96-CV-0260, 1998 WL 187425, at *1 (N.D.N.Y. Apr. 14, 1998) (Pooler, J.); *Moshier v. Trabout*, No. 96-CV-1666. 1998 WL 167298, at *1 (N.D.N.Y. Apr. 2, 1998) (Pooler, J. & Hurd, M.J.); *see also* N.D.N.Y.L.R. 41.2(b).  This discretion should be exercised when necessary to "achieve the orderly and expeditious disposition of cases."  *Link*, 370 U.S. at 630-31, 82 S. Ct. at 1389; *Williams*, 1998 WL 278288, at *2; *Minix*, 1998 WL 187425, at *1; *Moshier*, 1998 WL 167298, at *1.  *Pro se* litigants have a duty under this court's local rules to inform the court of address changes, or face dismissal for failure to prosecute.[6]  N.D.N.Y.L.R. 10.1(b), 41.2(b); *Williams*, 1998 WL 278288, at *2; *Minix*, 1998 WL 167298, at *1; *Moshier*,

---

[6]    Local Rule 10.1(b) provides that "[a]ll attorneys of record and pro se litigants must immediately notify the Court of any change of address."  N.D.N.Y.L.R. 10.1(b)(2) (emphasis omitted).  Failure to notify the court of a change in address in accordance with Local Rule 10.1(b) may result in the dismissal of any pending action.  *Id.* 41.2(b).

1998 WL 167298, at *1-*2.

The court's records in this case, when viewed in light of publicly available information, reflects that the most recent information given by the petitioner lists his mailing address as care of the Clinton Correctional Facility. At the outset of this case, when petitioner's *in forma pauperis* application was granted, he was pointedly made aware of the requirement that he notify the court and defendant's counsel of any address changes. *See* Dkt. No. 5. The fact that petitioner was aware of his obligation in this regard is evidenced by the fact that he did on at least one prior occasion submit a notice of address change to the court. *See* Dkt. No. 6. Yet, despite his release more than a year ago from DOCS custody, petitioner has failed to apprise the court of his new address. Based upon the petitioner's failure to comply with this important requirement, which would allow the court and respondent's counsel to communicate with him, I recommend the petition in this matter be dismissed on this procedural basis.

B.    Jurisdiction

In the event that the court is inclined to review the merits of the petition, it must first address the question of jurisdiction, particularly in

9

view of petitioner's release from incarceration.

Habeas relief is available to a state prisoner only if he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 USCA § 2254(a).  Regardless of a petitioner's subsequent release, it is within the jurisdiction of a federal court to issue a writ of habeas corpus if the petitioner was "in custody" at the time his application for relief was filed.  *Carafas v. LaVallee*, 391 U.S. 234, 237-38, 88 S. Ct. 1556, 1559-60 (1968).

The petition in this matter was filed at a time when McCants remained in state custody.  Under such circumstances, collateral consequences resulting from his conviction are presumed to survive his release.  *Spencer v. Kemna*, 523 U.S. 1, 12, 118 S. Ct. 978, 985 (1998) ("it is an 'obvious fact of life that most criminal convictions do in fact entail adverse collateral legal consequences'") (quoting *Sibron v. New York*, 392 U.S. 40, 55, 88 S. Ct. 1889, 1899 (1968)); *see also*, *e.g.*, *Barker v. Reynolds*, No. 9:98-CV-0732, 2001 WL 1860929, at *2 (N.D.N.Y. Apr. 19, 2001) (Sharpe, M.J.) (citing *Spencer* and *Sibron*); *Binder v. Szostak*, No. 96-CV-840, 1997 WL 176353, at *3 (N.D.N.Y. Apr. 11, 1997) (Pooler, J. & DiBianco, M.J.).

10

In this instance, while it is true that petitioner has been released, he may well suffer from additional, collateral consequences due to the disciplinary determination at issue and, importantly, the eighteen months of lost good time credits which resulted.  That loss, for example, undoubtedly delayed petitioner's release, and correspondingly, may have extended the duration of his parole.  Under these circumstances, I find that there does remain a live, justiciable controversy and, accordingly, this court has subject matter jurisdiction to entertain the claims set forth in McCants' petition.  *See Jago v. Van Curen*, 454 U.S. 14, 21 n.3, 102 S. Ct. 31, 36 n.3 (1981).

C.    AEDPA Standard of Review

Enactment of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), brought about significant new limitations upon the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254.  A federal court cannot grant habeas relief to a state prisoner on a claim

> that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

11

Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001). The AEDPA also requires that in any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry*, 403 F.3d at 66; *Boyette*, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that

> [u]nder AEDPA, we ask three questions to determine whether a federal court can grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

12

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

Because the AEDPA's restriction on federal habeas power is premised in no small part upon the duty of state courts to uphold the Constitution and faithfully apply federal laws, the AEDPA's exacting review standards apply only to federal claims which have been actually adjudicated on the merits in the state court. *Washington v. Schriver*, 255 F.3d 45, 52-55 (2d Cir. 2001). Accordingly, deference is not mandated under section 2254(d) if a state court decides the case on a procedural basis, rather than on the merits. *See Sellan v. Kuhlman*, 261 F.3d 303, 309-10 (2d Cir. 2001).

In *Sellan*, the Second Circuit answered the question of whether deference under section 2254(d) is mandated if a state court decides a case without citing to federal law or otherwise making reference to a federal constitutional claim. Specifically, that court held that deference is required if the federal claim was presented to the state court and there was an adjudication on the merits, even though the state court's decision lacks explicit reference to the federal claim or to federal case law. *Sellan*, 261 F.3d at 311-12. As the Second Circuit explained, the plain meaning

13

of § 2254(d)(1) dictates that

> [f]or the purposes of AEDPA deference, a state
> court "adjudicate[s]" a state prisoner's federal claim
> on the merits when it (1) disposes of the claim "on
> the merits," and (2) reduces its disposition to
> judgment.  When a state court does so, a federal
> habeas court must defer in the manner prescribed
> by 28 U.S.C. § 2254(d)(1) to the state court's
> decision on the federal claim – *even if the state
> court does not explicitly refer to either the federal
> claim or to relevant federal case law.*

*Sellan*, 261 F.3d at 312 (emphasis added)[7]; *see also Ryan v. Miller*, 303

F.3d 231, 246 (2d Cir. 2002).

When a state court's decision is found to be decided "on the merits",

that decision is "contrary to" established Supreme Court precedent if it

applies a rule that contradicts Supreme Court precedent, or decides a

case differently than the Supreme Court on a set of materially

indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06, 120

S.Ct. 1495, 1523 (2000).  Moreover, a federal court engaged in habeas

review must also determine not whether the state court's determination

---

[7]     In his opinion in *Sellan*, Chief Judge Walker acknowledged that
enlightenment in state court decisions as to the manner of disposition of federal claims
presented would greatly enhance a federal court's ability, on petition for habeas
review, to apply the AEDPA's deference standard.  *Sellan*, 261 F.3d at 312.  He noted,
however, that a state court's failure to provide such useful guidance does not obviate a
federal court's duty to make the analysis and pay appropriate deference if the federal
claim was adjudicated on the merits, albeit tacitly so.  *Id.*

was merely incorrect or erroneous, but instead whether it was "objectively unreasonable".  *Williams*, 529 U.S. at 409, 120 S.Ct. at 1521; *see also Sellan*, 261 F.3d at 315.  The Second Circuit has noted that this inquiry admits of "[s]ome increment of incorrectness beyond error", though "the increment need not be great[.]"  *Francis S.*, 221 F.3d at 111.

    D.    <u>Review of Petitioner's Claims</u>

       The petition in this matter, to the extent that it asserts constitutional claims, complains of alleged procedural due process deprivations in violation of the Fourteenth Amendment to the United States Constitution.[8] The procedural due process arguments now raised were presented to the Third Department as part of petitioner's Article 78 challenge to the disciplinary determination.  Addressing those claims, the Third Department found substantial evidence to support the disciplinary determination and additionally noted that "[t]he assertion that the determination of [petitioner's] guilt was a result of hearing officer bias or the violation of his procedural rights has been examined and found to be without merit[.]"  R. 175.  This determination is entitled to AEDPA

---

[8]    To the extent that the petition asserts violations of state law and regulation, those claims are not cognizable in a proceeding brought pursuant to 28 U.S.C. § 2254.  *Estelle v. McGuire*, 502 U.S. 62, 67-69, 112 S.Ct. 475, 479-80 (1991); *Ponnapula v. Spitzer*, 297 F.3d 172, 181 (2d Cir. 2002).

deference.

### 1.    Clearly Established Supreme Court Precedent

The due process requirements associated with inmate disciplinary proceedings are well-established.  Under *Wolff v. McDonnell*, the constitutionally mandated due process requirements include 1) written notice of the charges; 2) the opportunity to appear at a disciplinary hearing and present witnesses and evidence, subject to legitimate safety and penological concerns; 3) a written statement by the hearing officer explaining his or her decision and the reasons for the action being taken; and 4) in some circumstances, the right to assistance in preparing a defense.  418 U.S. 539, 564-67, 94 S. Ct. 2963, 2978-80 (1974); *Eng v. Coughlin*, 858 F.2d 889, 897-98 (2d Cir. 1988).  Additionally, a hearing officer's determination will be upheld so long as that determination is supported by "some evidence."  *Superintendent, Mass. Corr. Institution, Walpole v. Hill*, 472 U.S. 445, 455, 105 S. Ct. 2768, 2774 (1985).

### 2.    Contrary To, or Unreasonable Application of, Clearly Established Supreme Court Precedent

Having reviewed the transcript of the disciplinary proceedings, considered in light of petitioner's arguments regarding the deprivation of a due process right, I am unable to recommend a finding that the Third

Department's determination was contrary to, or represented an

unreasonable application of, *Wolff* and its progeny.  Prior to the hearing

petitioner was afforded employee assistance, and the sufficiency of that

assistance was considered – albeit off the record – by the assigned

hearing officer, who after making an inquiry concluded, on the record, that

proper assistance had been provided.  R. 39.  The record also reflects

significant evidence supporting the finding of petitioner's guilt, and that the

petitioner acted capably in his own defense during the course of the

hearing and was afforded the opportunity to confront and cross-examine

the witnesses against him, as well as to present the testimony of both

himself and a co-inmate.[9]  To the extent that the petitioner was denied the

opportunity to review photographs and call other witnesses, those

determinations were the result of security concerns and a court, when

performing habeas review, is neither required nor empowered to second-

guess such determinations.  *See*, *e.g.*, *Lira v. Director of Corrs. for State

of Ca.*, No. C03-831, 2003 WL 22939242, at *3-*5 (N.D. Cal. Dec. 9,

---

[9]        As respondent has argued, the state court's review of the evidence
sufficiency was conducted under a standard which is arguably more stringent than that
which would be required on habeas review.  *Compare Hill*, 472 U.S. at 455, 105 S. Ct.
at 2774 (requiring "some evidence" to support hearing officer's determination) with
N.Y. CPLR § 7803 and *Towles v. Selsky*, 12 A.D.3d 737, 737, 783 N.Y.S.2d 431, 432
(3d Dept. 2004) (requiring "substantial evidence" to support such determination).

2003).

Based upon the foregoing, I recommend a finding that the Third

Department's rejection of petitioner's procedural due process arguments

on the merits was neither contrary to, nor an unreasonable application of,

clearly established Supreme Court precedent.

IV.     SUMMARY AND RECOMMENDATION

By failing to apprise the court and respondent's counsel of his

change of circumstances, the petitioner in this case has not only

demonstrated his manifest disinterest in pursuing the matter, but has

failed to comply with an important requirement under this court's local

rules.  Accordingly, McCants' petition is subject to dismissal on this

procedural basis.

Turning to the merits of petitioner's claims, and applying the required

AEDPA deferential standard, I find the state court's finding that petitioner's

procedural due process rights were not violated in conjunction with the

disciplinary hearing and the determination and punishment was neither

contrary to nor an unreasonable application of clearly established

Supreme Court precedent, and thus recommend dismissal of the petition

on the merits.

18

Based upon the foregoing, it is therefore hereby

RECOMMENDED, that the petition in this matter be DENIED and DISMISSED in all respects.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties by regular mail.

Dated: September 20, 2005
Syracuse, NY

David E. Peebles
U.S. Magistrate Judge